# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

Nº 06-CV-4859 (JFB) (ETB)

———————————

ANTHONY CONTE,

Plaintiff,

VERSUS

NEWSDAY, INC. ET AL.,

Defendants.

———————————

MEMORANDUM AND ORDER
March 25, 2010

———————————

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Anthony Conte ("Conte" or "plaintiff") brings this action against: Newsday Inc., Timothy Knight, John Mancini, Mark Harrington (collectively, the "Newsday defendants"); Consumers Warehouse Center, Inc., James S. Baloga, Sr., James A. Baloga, Jr., Mario Escamilla (collectively, the "Consumers Warehouse defendants"); Alfonso Amorizzo, Laurence Furnell, Rhoda Zelkind, Harris Zelkind, Carol Hazeldine, Sam Martinez, Gregory Connors, James McMullen (collectively, the "route distributor defendants"); Edmond Chin-Sang, Pete Dill, Raymond Dodge, Robert Dodge, Ken Stone, Rob Rein (collectively, the "independent contractor distributor defendants"); Giaimo Associates, LLP, Joseph O. Giaimo, Jade Fuller (collectively, the "Giaimo Defendants"); Dennis Springer, Ed Smith, and "John and Jane Does, 1-30," unknown individuals and entities, in their individual and official capacities (collectively, "defendants"),[1] alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d), the Lanham Act, 15 U.S.C. § 1125(a), the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511, the Sherman Act, 15 U.S.C. § 2, and various state law tort claims, all arising from, among other things, Newsday's alleged attempts to

———————————

[1] As the Court noted in its September 30, 2008 Memorandum and Order, plaintiff also names other individuals as defendants in this action – John McKeon, Louis Sito, Robert Brennan, Robert Garcia, Dorothy McKillop, John Faiella, and Bob Hoblin – but the docket sheet does not indicate that any of these defendants has been served. Accordingly, they are not proper defendants in this action.

monopolize and dominate the print advertising market on Long Island.

Defendants move to dismiss the RICO, Sherman Act, ECPA, defamation, and fraud claims in plaintiff's Third Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, defendants' motions are granted in part and denied in part. Specifically, the Court grants defendants' motion to dismiss plaintiff's RICO, Sherman Act, and ECPA claims. The Court also grants defendants' motions to dismiss plaintiff's slander claim against the Newsday defendants and all of plaintiff's injurious falsehood claims. Defendants' motions are denied in all other respects.

## I. BACKGROUND

### A. Facts

The Court summarized plaintiff's factual allegations in its Memorandum and Order of September 30, 2008 granting in part and denying in part defendants' motion to dismiss the Second Amended Complaint.[2] Plaintiff's factual allegations in the Third Amended Complaint are largely the same, and to the extent they differ, the Court sets forth the relevant facts in the Discussion section *infra*. These facts are not findings of fact by the Court, but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party. *See LaFaro v. N.Y. Cardiothoracic Group*, 570 F.3d 471, 475 (2d Cir. 2009).

### B. Procedural History

Plaintiff filed the initial complaint in this action on September 7, 2006. Plaintiff subsequently filed two amended complaints and an amended RICO statement. By Memorandum and Order dated September 30, 2008, the Court denied in part and granted in part defendants' motions to dismiss the Second Amended Complaint. Specifically, the Court denied defendants' motions to dismiss plaintiff's federal Lanham Act and state tortious interference claims. The Court granted defendants' motions in all other respects, but provided plaintiff with an opportunity to re-plead the dismissed claims.

Plaintiff filed a Third Amended Complaint on April 2, 2009, re-asserting all of the dismissed claims, as well as a fraud claim against the Consumers Warehouse defendants.[3] The Newsday defendants, Giaimo defendants and route distributor defendants, and Consumers Warehouse defendants all filed motions to dismiss on June 19, 2009. Plaintiff filed oppositions to defendants' motions on September 23, 2009. The Newsday defendants and Consumers Warehouse defendants filed replies on September 25, 2009. The Giaimo and route distributor defendants filed a reply on October 7, 2009. By letter dated October 1, 2009, *pro se* defendant Dennis Springer also moved to dismiss plaintiff's claims against him. This matter is fully submitted.

---

[2] Familiarity with that decision is presumed.

[3] Plaintiff did not file an additional amended RICO statement.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), setting forth a two-pronged approach for courts deciding a motion to dismiss. District courts are to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

Moreover, as the Second Circuit emphasized in *Sealed Plaintiff v. Sealed Defendant*, "[o]n occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally. . . . This obligation entails, at the very least, a permissive application of the rules governing the form of pleadings." *Sealed Plaintiff v. Sealed Defendant*, No. 06-1590-cv, 2008 U.S. App. LEXIS 17113, at *15-16 (2d Cir. Aug. 12, 2008) (citations and quotation marks omitted); *see also Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145-46 (2d Cir. 2002) (holding that when plaintiff is appearing *pro se*, the Court shall "'construe [his complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'") (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)); *accord Sharpe v. Conole*, 386 F.3d 483, 484 (2d Cir. 2004).

## III. FEDERAL CLAIMS

### A. RICO Claims

Claims One and Two in plaintiffs' Third Amended Complaint allege civil RICO violations by Newsday, Newsday employees, and independent contractors working with

Newsday.[4] (Third Am. Compl. ¶ 94.) Plaintiff alleges that these defendants "constitute an association-in-fact 'enterprise'" and that the enterprise "acts as a continuing unit to date engaging in an open ended pattern of racketeering that has the potential threat of future criminal conduct." (*Id.*) Plaintiff further alleges that the pattern of racketeering involves "several separate but related schemes," including circulation and advertising fraud (*id.* ¶¶ 96-103), which had a common purpose and effect – "to help Newsday maintain a monopoly and eliminate competition in the print advertising market on Long Island, New York." (*Id.* ¶ 103) For the reasons discussed below, plaintiff's allegations are insufficient to support a plausible RICO claim.

### 1. Legal Standard

Pursuant to RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). Section 1962(d) makes it "unlawful for any person to conspire to violate . . . the provisions of subsection . . . (c)." 18 U.S.C. § 1962(d).

In order to allege a violation of Section 1962(c), a plaintiff must establish "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity." *Anatian v. Coutts Bank Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)); *see also S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996) ("[A] plaintiff must allege that a defendant, 'employed by or associated with' an enterprise affecting interstate or foreign commerce, conducted or participated in the conduct of this enterprise's affairs 'through a pattern of racketeering activity.'") (quoting 18 U.S.C. § 1962(c) and *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)). "Under RICO, a pattern of racketeering activity consists of at least two acts of racketeering activity (often referred to as the 'predicate acts') within a ten year period." *Lugosch v. Congel*, 443 F. Supp. 2d 254, 264 (N.D.N.Y. 2006) (citing 18 U.S.C. § 1961(1), (5)); *see also Zito v. Leasecomm Corp.*, No. 02-CV-8074 (GEL), 2003 WL 22251352, at *17 (S.D.N.Y. Sept. 30, 2003) (concluding that each defendant must participate in the conduct of the enterprise). Racketeering activity is defined as "any act which is indictable" under specified provisions of Title 18, including mail fraud, wire fraud, extortion, and bank fraud. 18 U.S.C. § 1961(1)(B).

For violations of the RICO conspiracy statute, Section 1962(d), a plaintiff must establish that the defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 244 (2d Cir. 1999).

---

[4] In the Second Amended Complaint, plaintiff alleged that all of the defendants in this action were associated with the alleged RICO enterprise.

A RICO enterprise under Section 1961(4) includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct" which is "proved by evidence of ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Where a complaint alleges an association-in-fact enterprise, courts in this Circuit look to the "hierarchy, organization, and activities" of the association to determine whether "its members functioned as a unit." *First Capital Asset Mgmt. v. Saitwood, Inc.*, 385 F.3d 159, 174-75 (2d Cir. 2004) (citations and quotations omitted).

The Second Circuit has made clear that "the person and the enterprise referred to must be distinct," and, therefore, "a corporate entity may not be both the RICO person and the RICO enterprise under section 1962(c)." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994). However, "a defendant may be a RICO person and one of a number of members of the RICO enterprise." *Id.* (quotation omitted). Furthermore, an employee of a corporation is legally distinct from the corporation itself and therefore can function as a RICO person where the corporation is the alleged RICO enterprise. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001).

2. Application

Defendants argue that plaintiff has failed to adequately allege an association-in-fact enterprise, predicate acts, or continuity of the alleged enterprise. For the reasons set forth below, the Court agrees and grants defendants' motion to dismiss plaintiff's RICO claim.

a. RICO Enterprise

Defendants argue that plaintiff has failed to adequately allege the existence of a RICO enterprise. For the reasons set forth below, the Court agrees.

Plaintiff alleges insufficient facts to support a plausible claim that the moving defendants constituted an association-in-fact enterprise. Plaintiff has not set forth any allegations, outside of conclusory statements, to support a plausible claim that defendants formed an "'ongoing organization, formal or informal'" or any allegations tending to show that "'the various associates [of the alleged enterprise] function as a continuing unit.'" *First Capital Asset Mgmt.*, 385 F.3d at 173 (quoting *Turkette*, 452 U.S. at 583). Although a RICO enterprise need not have a formal hierarchy, *see Boyle v. United States*, 129 S. Ct. 2237, 2245-46 (2009), plaintiff fails to allege any structure or organization whatsoever. Instead, plaintiff lists a variety of defendants and asserts, without any plausible basis, that they constituted an enterprise. This allegation is insufficient for a RICO claim. *See, e.g., United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 475 (E.D.N.Y. 2007) ("The Amended Complaint contains virtually no allegations regarding the structure and organization of the

alleged [enterprise], and leaves a plethora of unanswered questions regarding the membership, purpose, and structure of that entity."); *May v. Terranova*, No. 87 CV 1578(SJ), 1999 WL 118773, at *5 (E.D.N.Y. Mar. 2, 1999) ("Plaintiffs' conclusory 'naming of a string of entities' does not adequately allege an enterprise and, therefore, their RICO claims should be dismissed." (quoting *Richmond v. Nationwide Cassel, LP*, 52 F.3d 640, 646 (7th Cir. 1995))); *Bernstein v. Misk*, 948 F. Supp. 228, 235 (E.D.N.Y. 1997) ("The indifferent attempts to plead the existence of an enterprise fall short of their goal in that they frustrate assiduous efforts to identify its membership, its structure (formal or informal), or its functional unity.").

Furthermore, plaintiff's inclusion of the non-Newsday defendants in the alleged enterprise contradicts his allegation that the enterprise acted with the common purpose of helping "Newsday maintain a monopoly and eliminate competition in the print advertising market on Long Island." (Third Am. Compl. ¶ 103.) Plaintiff alleges that Newsday, its employees, and various independent contractors engaged in a series of independent frauds that somehow benefitted Newsday. These "hub and spokes" allegations are insufficient to support a conclusion that the various defendants were associated with one another for a common purpose.[5] *See Cedar Swamp Holdings, Inc., v. Zaman*, 487 F. Supp. 2d 444, 449-50 (S.D.N.Y. 2007) (stating that a "'hub-and-spokes' structure – that is, allegations that a common defendant

perpetrated various independent frauds, each with the aid of a different co-defendant – do not satisfy the enterprise element of a RICO claim"); *see also, e.g.*, *N.Y. Automobile Insurance Plan v. All Purpose Agency and Brokerage, Inc.*, No. 97 Civ. 3164 (KTD), 1998 WL 695869, at *6 (S.D.N.Y. Oct. 6, 1998) (denying plaintiff's motion for summary judgment and holding that a series of discontinuous independent frauds does not constitute an enterprise, but rather a series of two-party conspiracies). In short, plaintiff fails to allege how each defendant associated with the other defendants in the alleged enterprise, what the defendants' roles were in any alleged enterprise, the structure and functioning of the alleged enterprise, or even a coherent common purpose of the enterprise.

Plaintiff's RICO claim also fails because he fails to properly allege that the individual defendants participated in the operation or management of the alleged RICO enterprise. In *Reves v. Ernst & Young*, the Supreme Court explained that "[i]n order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." 507 U.S. 170, 179 (1993); *see also id.* at 184 ("[I]t is clear that Congress did not intend to extend RICO liability under § 1962(c) beyond those who participate in the operation or management of an enterprise through a pattern of racketeering activity."). Though the Second Circuit has described the "operation or management" test as establishing a "relatively low hurdle for plaintiff[] to clear" at the pleading stage, "the RICO defendant must have played '*some* part in directing the enterprise's affairs.'" *First Capital Asset Mgmt.*, 385 F.3d at 176 (quoting *DeFalco v. Bernas*, 244 F.3d 286, 310 (2d Cir. 2001)).

---

[5] For instance, plaintiff fails to explain how Newsday and the independent contractors shared a common purpose of eliminating Newsday's competition.

In this case, plaintiff has not alleged any facts that would demonstrate that any defendants participated in the operation or management of the alleged RICO enterprise. Instead, in the Third Amended Complaint and in plaintiff's RICO Statement, plaintiff generally alleges a variety of schemes, and then lists the names of defendants under each scheme without showing their specific involvement in managing the affairs of the enterprise to monopolize the industry. Moreover, in an effort to plead an enterprise, plaintiff generally alleges that the independent contractor distributors were recruited by Newsday so that Newsday could accomplish its scheme, but fails to articulate how these various entities and individuals exerted control over the enterprise's affairs. As the Second Circuit has noted, "[s]imply alleging that certain entities provide services which are helpful to an enterprise without any allegations that those entities exert any control over the enterprise does not sufficiently allege a claim under RICO against those entities." *City of N.Y. v. Smokes-Spirits.Com, Inc.*, 541 F.3d 425, 449 (2d Cir. 2008), *rev'd on other grounds sub nom. Hemi Group, LLC v. City of N.Y.*, 130 S. Ct. 983 (2010); *see also Reves*, 507 U.S. at 179; *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir. 1994). In the instant case, any alleged benefits to these defendants are vague and disconnected to the alleged enterprise, and, thus, the complaint fails to articulate in a plausible manner how the defendants participated in the operation and management of the enterprise.

Accordingly, plaintiff's RICO claim must be dismissed because plaintiff fails to properly plead a RICO enterprise.[6]

---

[6] Defendants also argue that plaintiff has failed to allege a RICO enterprise that is distinct from Newsday, and that, therefore, Newsday cannot function as a RICO person. (Newsday Br. at 14.) The Court rejects that argument. The Court recognizes that "by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant, the distinctness requirement may not be circumvented." *Riverwoods*, 30 F.3d at 344. However, in this case, plaintiff alleges that the enterprise consists not only of Newsday and its employees, but also of third party independent contractors who acted as distributors for Newsday.

Although defendants argue that these defendants were merely "agents" of Newsday, the Third Amended Complaint alleges that they were independent contractors and that they also had contracts with plaintiff. Therefore, the Court cannot conclude at the motion to dismiss stage that the independent contractors were merely agents of Newsday such that the alleged enterprise was not distinct from Newsday itself. *See, e.g., Levine v. First American Title Ins. Co.*, – F. Supp. 2d – , Civ. No. 09-842, 2010 WL 152133, at *9-11 (E.D. Pa. Jan. 14, 2010) (denying motion to dismiss where alleged RICO person was defendant corporation and alleged RICO enterprise consisted of that corporation and "nonexclusive agents" who were "independent and distinct entities and individuals"). Furthermore, with respect to the Newsday employees, they are by definition legally distinct from Newsday for RICO purposes. *See Cedric Kushner*, 533 U.S. at 163. Therefore, although plaintiff's allegations regarding the RICO enterprise suffer from other defects, as discussed above, the Court rejects defendants' distinctness argument.

### b. Predicate Acts

Plaintiff's RICO claim also fails because plaintiff has not adequately pled the existence of two or more predicate acts constituting a pattern of racketeering activity. *See* 18 U.S.C. § 1962(c). In the Third Amended Complaint, plaintiff purports to allege various predicate acts: (1) "dozens of instances between April 1, 2003 and March 31, 2005" where the defendants misled the plaintiff (and others) by telephone and mail as to the true circulation numbers of Newsday; (2) misleading the plaintiff (and others) as to the severity of the circulation fraud scheme; (3) engaging in extortion from February to at least September 2005 by demanding money from plaintiff to prevent the publication of defamatory stories about plaintiff; and (4) illegally intercepting plaintiff's emails from February to at least December 2005. (Third Am. Compl. ¶ 102.) Plaintiff also alleges that there were "thousands of additional predicate acts against numerous victims" that constituted "mail fraud, wire fraud, bank fraud, conspiracy, extortion and economic espionage." (*Id.* ¶ 103.) For the reasons set forth below, none of plaintiff's alleged predicate acts are sufficient to support his RICO claim.

With respect to plaintiff's allegations of mail and wire fraud, plaintiff must allege "(1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *S.Q.K.F.C., Inc. v. Bell Atlantic TriCorn Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996). Furthermore, when alleging fraudulent activities as predicate acts for a RICO claim, a plaintiff must satisfy the particularity requirements of

Rule 9(b). *More v. PaineWebber, Inc.*, 189 F.3d 165, 172-73 (2d Cir. 1999). Therefore a RICO plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999) (internal quotations omitted).

Plaintiff's allegations of mail and wire fraud in the Third Amended Complaint are wholly conclusory. There are few, if any, factual allegations connecting any of the defendants to the alleged acts of mail and wire fraud.[7] Plaintiff does not identify which defendant caused each allegedly fraudulent statement to be spoken, written, wired or mailed, and to whom the communication was made; when the communication was made; and how it advanced the fraudulent scheme. *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992). As the Second Circuit has noted, "conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." *Decker v. Massey-Ferguson Ltd.*, 681 F.2d 111, 114 (2d Cir. 1982). For instance, the complaint alleges that in "dozens of instances," the Newsday defendants misled plaintiff as to the true circulation numbers of the newspaper. (Third Am. Compl. ¶ 102.) However, the complaint does not allege who made the alleged

---

[7] Plaintiff's RICO Statement is not any clearer. The twenty-four page statement confusingly attempts to detail the variety of predicate acts by listing a variety of crimes and defendants, without explaining any particular defendant's involvement in any of those crimes. (*See, e.g.*, Pl.'s Am. RICO Statement, at 5-7.)

misstatements, or when or where the statements were made. Thus, the alleged predicate acts involving fraud are not pled with sufficient particularity and cannot support plaintiff's RICO claim.

Plaintiff's other alleged predicate acts, *i.e.*, bank fraud, extortion, and email interception, also fail to support his RICO claims. With respect to bank fraud, plaintiff's claim suffers from the same pleading defects as the mail and wire fraud claims. Plaintiff also has not pled how a bank was defrauded by any of these alleged acts, which is a crucial element of the claim. *United States v. Jacobs*, 117 F.3d 82, 92 (2d Cir. 1997) ("In order for the bank fraud statute to apply, the fraud must be against the bank."). The Second Circuit has held "that where the fraud . . . is aimed not at the bank but at an individual, the offense is not bank fraud." *See id.* (citing *United States v. Blackmon*, 839 F.2d 900, 904 (2d Cir. 1988)). Plaintiff makes no allegation that a bank was defrauded. Accordingly, the complaint fails to properly plead the predicate act of bank fraud.

Plaintiff's allegations of extortion are also insufficient because RICO applies to extortionate acts only where they are "induced by 'wrongful use of actual or threatened force, violence, or fear, or under color of official right." *Park South Assocs. v. Fischbein, et al.*, 626 F. Supp. 1108, 1114 (S.D.N.Y. 1986). Therefore, plaintiff's allegations that defendants threatened to defame him are insufficient for plaintiff's RICO claim. *See, e.g.*, *Kimm v. Lee*, No. 04 Civ. 5724(HB), 2005 WL 89386, at *6 (S.D.N.Y. Jan. 13, 2005) (dismissing RICO claim based on alleged threat to banish plaintiff from

community).[8] The only allegation of threatened violence or fear deals with defendant Amorizzo's threats against plaintiff. However, according to the complaint, that single act was allegedly due to the plaintiff's termination of Amorizzo's distribution route and is thus completely unrelated to any alleged Newsday enterprise. (*See* Third Am. Compl. ¶¶ 68-73.) Indeed, Amorizzo is not even named in the complaint as a RICO defendant. Thus, plaintiff's extortion allegations are insufficient for a RICO claim.

Finally, plaintiff alleges that the alleged RICO scheme was furthered by illegal email interception under 18 U.S.C. § 2511. However, email interception does not qualify as a predicate act under the RICO statute.[9] *See* 18 U.S.C. § 1961(1). Furthermore, as discussed *infra*, plaintiff fails to state a claim for violation of the ECPA as a matter of law.

In short, plaintiff's RICO claim must also fail because he has not adequately alleged any predicate acts to provide the basis for a RICO claim.

### c. "Continuity" Requirement

Plaintiff's RICO claim also fails because he has failed to allege that the acts of the RICO enterprise are related and that they amount to, or pose, a threat of continuing criminal conduct. *Schlaifer Nance & Co. v.*

---

[8] It is also well established that defamation does not provide a requisite predicate act for a RICO claim. *See, e.g.*, *Kimm*, 2005 WL 89386, at *5 (collecting cases).

[9] Plaintiff's conclusory allegation of economic espionage also does not qualify as a predicate act under the RICO statute.

*Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997). "[A] plaintiff in a RICO action must allege either an 'open-ended' pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a 'closed end' pattern of racketeering activity (i.e., past criminal conduct 'extending over a substantial period of time')." *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 466 (2d Cir. 1995), *cert denied*, 116 S. Ct. 2547 (1996). In the Third Amended Complaint, plaintiff makes the conclusory allegation that the alleged RICO enterprise was engaged in an "open ended" pattern of criminal activity. "To satisfy open-ended continuity, the plaintiff . . . must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999). Plaintiff does not allege any facts to indicate that he is proceeding on a claim of "open-ended" continuity. In fact, in plaintiff's opposition to defendants' motion to dismiss, plaintiff acknowledges that the alleged pattern of racketeering activity by defendants "would have continued to date were it not for the fact that they were caught and indicted shortly after the plaintiff filed his complaint." (Pl.'s Newsday Opp. at 10.) Thus plaintiff has failed to allege open-ended continuity of the alleged RICO enterprise.[10]

In sum, the complaint fails to state a substantive RICO claim because plaintiff has not adequately alleged the following: the existence of a RICO enterprise; two or more predicate acts of an alleged enterprise constituting a pattern of racketeering activity; or a continuing threat of criminal conduct by the alleged enterprise.

### d. RICO Conspiracy Claim

Because plaintiff's substantive RICO claims cannot survive defendants' motions to dismiss, plaintiffs' conspiracy claim must also be dismissed. *See, e.g.*, *First Capital Asset Mgmt.*, 385 F.3d at 164 ("And because Plaintiffs' RICO conspiracy claims are entirely dependent on their substantive RICO claims, we also concur in the District Court's dismissal of the RICO conspiracy claims."); *M'Baye v. N.J. Sports Prod., Inc.*, No. 06-CV-3439 (DC), 2007 U.S. Dist. LEXIS 9101, at *22 (S.D.N.Y. Feb. 7, 2007) ("Where a substantive RICO claim is deficient, a RICO conspiracy claim under § 1962(d) must be dismissed."). Accordingly, defendants' motions to dismiss plaintiff's RICO conspiracy claims are also granted.

### B. ECPA Claim

Defendants also move to dismiss plaintiff's ECPA claim, which is based on allegations that various defendants conspired

---

[10] As discussed in the Court's September 30, 2008 Memorandum and Order, plaintiff has also failed to allege closed-ended continuity for an alleged RICO enterprise because the complained-of activities do not extend over a "substantial" period of time. All of the schemes alleged by plaintiff (except for the circulation fraud scheme) fall within the time frame of 2003 (when defendant began production of his magazine) and 2005 (when plaintiff's company no longer existed). A period of less than two years is generally insufficient to satisfy closed-end continuity. *See First Capital Asset Mgmt.*, 385 F.3d at 181 ("[T]his Court has never found a closed-ended pattern where the predicate acts spanned fewer than two years.").

to electronically "intercept plaintiff's electronic communications." Because plaintiff does not allege that any of his emails were electronically "intercepted" as that term is defined in the statute, plaintiff's ECPA claims are dismissed.

### 1. Legal Standard

Title I of the ECPA, which amended the Wiretap Act of 1968, makes it an offense to "intentionally intercept[], endeavor[] to intercept, or procure[] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . ." 18 U.S.C. § 2511(1); *see also United States v. Councilman*, 418 F.3d 67 (1st Cir. 2005) (discussing the ECPA). "Intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

"[I]n order to state a claim under the Wiretap Act, a plaintiff must allege that a communication was intentionally intercepted through the use of a device." *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, No. 07-Civ-1029, 2007 WL 4394447, at *4 (E.D. Pa. Dec. 13, 2007); *see also Wesley College v. Pitts*, 974 F. Supp. 375, 384 (D. Del. 1997) (finding no interception where a party "merely read[s] the e-mail on the computer screen of the author or recipient"). "[A]bsent an interception, neither the disclosure nor use of the contents of the communication violates the Wiretap Act." *Ideal Aerosmith*, 2007 WL 4394447, at *4; *see also Wesley College*, 974 F. Supp. at 381. Moreover, "[t]he Court need not accept a conclusory allegation that conduct alleged in the complaint constituted an interception under the Wiretap Act." *Crowley v. Cybersource Corp.*, 166 F. Supp. 2d 1263, 1268 (N.D. Cal. 2001).[11]

### 2. Application

In plaintiff's Third Amended Complaint, plaintiff alleges that, from January 2005 to September 2005, defendants "conspired to and worked in concert to electronically intercept, misappropriate and divert, without authorization or permission, the confidential e-mails of the plaintiff and his business I Media that contained confidential business information and trade secrets." (Third Am. Compl. ¶ 142.) The Third Amended Complaint alleges that I-Media sent emails to its distributors, including defendant Laurence Furnell. (*Id.*) Plaintiff alleges that "Furnell misappropriated and electronically re-delivered [I-Media's] e-mails" to the Newsday defendants "without the plaintiff's authorization or permission." (*Id.*) Plaintiff also alleges that Furnell, Newsday, and the Giaimo defendants "recruited the additional defendants . . . to also electronically intercept and forward e-mails sent to them by the plaintiff and I Media that were misappropriate[d] and electronically re-delivered by them to Newsday without the

---

[11] As discussed in the Court's September 30, 2008 Memorandum and Order, some circuit courts of appeals have adopted a narrow definition of interception to include only acquisitions of a communication contemporaneous with transmission, not storage. The Second Circuit has not addressed this issue. This Court need not resolve the debate over the regulation of stored electronic communications because, as discussed above, the instant case does not implicate even the broadest interpretation of "intercept" because plaintiff makes no allegation that any "device" was used and, indeed, specifically alleges that the intended recipient received the communication.

plaintiff's authorization or permission." (*Id.*) These allegations do not state a claim under the ECPA or federal wiretapping law.[12]

The Court finds *Crowley v. Cybersource Corporation* to be instructive here. In *Crowley*, plaintiffs transferred information about themselves to Amazon.com as part of their transactions. 166 F. Supp. 2d at 1268. Amazon relayed the information to a third-party for the purposes of verifying the plaintiffs' credit. Plaintiffs alleged that Amazon intercepted their communications and disclosed contents to the third party in violation of the Wiretap Act. The court granted defendant's motion to dismiss, stating:

> Amazon did not, however, "intercept" the communication within the meaning of the Wiretap Act, because Amazon did not acquire it using a device other than the drive or server on which the e-mail was received. . . . Amazon acted as no more than the second party to a communication. This is not an interception as defined by the Wiretap Act.

*Id.* at 1269; *see also Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 504 (2d Cir. 2005) (holding that Earthlink's continued receipt and retention on its system of emails sent to subscriber's closed account did not constitute the use of a device resulting in an interception under the Wiretap Act).

Here, plaintiff specifically alleges that the allegedly confidential emails were sent by plaintiff to Furnell and various other distributors. To the extent plaintiff argues that the receipt by Furnell and other route distributor defendants qualifies as an interception, that argument is unavailing. First, the route distributors were the intended recipients of the emails and, therefore, direct parties to the communications. Second, plaintiff has failed to allege the use of a device to intercept the communications. *See Ideal Aerosmith*, 2007 WL 4394447, at *4 ("The drive or server on which an email is received does not constitute a device for purposes of the Wiretap Act."). Accordingly, any transmission to Furnell or the other route distributors clearly does not qualify as an "interception" under the ECPA.

Similarly, any alleged forwarding or re-delivering of the emails to Newsday by the distributors, after the distributors had received the emails, also do not constitute "interceptions" under the ECPA. Once an email message arrives at its destination, any privacy expectation that the intended recipient of the internet communication will not reveal it dissipates. *See United States v. Lifshitz*, 369 F.3d 173, 190 (2d Cir. 2004) (explaining that internet users "would lose a legitimate expectation of privacy in an e-mail that had already reached its recipient; at this moment, the e-mailer would be analogous to a letter-writer, whose expectation of privacy ordinarily terminates upon delivery of the letter") (citations and quotations omitted); *see also United States v. Maxwell*, 45 M.J. 406, 417 (C.M.A. 1996) (holding that, as with postal letters, once an email message "is received and opened," its "destiny . . . lies in the control of the recipient . . ., not the sender, absent some legal privilege."). Plaintiff has

---

[12] The Court notes that plaintiff's allegations regarding his ECPA claim are virtually identical to those in the Second Amended Complaint and, therefore, suffer from exactly the same defects identified by the Court in its Memorandum and Order of September 30, 2008.

not alleged that Newsday defendants intercepted plaintiff's emails through a device, but that they received the emails as sent to them by the distributor defendants. As discussed above, the distributors did not intercept the emails themselves – they were the intended recipients. The mere forwarding of emails by the intended recipients of those emails does not violate the ECPA. Accordingly, plaintiff's ECPA claim is dismissed.

## C. Sherman Act Claim

Defendants also move to dismiss plaintiff's antitrust claims. Plaintiff alleges that the Newsday defendants violated Section 2 of the Sherman Act by monopolizing and attempting to monopolize an alleged market in print advertising sales on Long Island, New York. To state a claim for monopolization under Section 2, a plaintiff must demonstrate that: "(1) the defendant had monopoly power in the relevant market; (2) the defendant engaged in anticompetitive conduct; and (3) its injury was, in fact, caused by the defendant's violation of the antitrust laws." *Irvin Indus., Inc. v. Goodyear Aerospace Corp.*, 974 F.2d 241, 244 (2d Cir. 1992). To state a claim for attempted monopolization under Section 2, a plaintiff must allege that: (1) the defendants engaged in predatory or anticompetitive conduct; (2) with a specific intent to monopolize; and (3) a dangerous probability of achieving monopoly power. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993); *Tops Markets, Inc. v. Quality Markets. Inc.*, 142 F.3d 90, 99-100 (2d Cir. 1998). "In order to determine whether there is a dangerous probability of monopolization, courts have found it necessary to consider the relevant market and the defendant's ability to

lessen or destroy competition in that market." *Spectrum Sports*, 506 U.S. at 456.

Defendants argue that plaintiff's antitrust claims must fail because plaintiff has failed to allege the relevant market and has failed to allege any anticompetitive conduct.[13] For the

---

[13] Defendants also argue that plaintiff has failed to satisfy the jurisdictional requirements of the Sherman Act because plaintiff has failed to adequately allege a connection between defendants' alleged conduct and interstate commerce. The Court rejects that argument. Section 2 of the Sherman Act applies to attempts to monopolize "any part of the trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 2. "In the absence of a sufficient nexus to such commerce, federal courts lack subject matter jurisdiction over an antitrust claim." *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*, 128 F.3d 59, 66 (2d Cir. 1997). This interstate commerce requirement can be satisfied in two ways: "(1) where the defendant's conduct directly interferes with the flow of goods in the stream of commerce (the 'in commerce' test); or (2) where the defendant's conduct has a substantial effect on interstate commerce (the 'effect on commerce' test)." *Id.* at 67.

In this case, plaintiff alleges that he was attempting to expand his business to areas including New Jersey, Connecticut, Pennsylvania, and Florida (Third Am. Compl. ¶¶ 6-7, 9-10, 13), that plaintiff's attempts at conducting business with out-of state customers were thwarted by Newsday's alleged conduct (*id.* ¶ 57), and that Newsday's alleged circulation scheme involved national advertising (*id.*). Based solely on the allegations in the complaint, the Court cannot conclude on this motion to dismiss that the alleged conduct did not have a substantial effect on interstate commerce. *See, e.g.*, *Hamilton*, 128 F.3d at 67 (denying motion to dismiss); *Arnold Chevrolet LLC v. Tribune Co.*, 418 F. Supp. 2d 172, 178-79 (E.D.N.Y. 2006) (denying motion to

reasons discussed below, the Court agrees and dismisses plaintiff's Sherman Act claims.

### 1. Relevant Market

In order to plead a claim of monopolization or attempted monopolization, a plaintiff must allege the existence of and adequately define the relevant market. "For a monopoly claim 'to survive a Rule 12(b)(6) motion to dismiss, an alleged product market must bear a rational relation to the methodology courts prescribe to define a market for antitrust purposes–analysis of the interchangeability of use or the cross-elasticity of demand, and it must be plausible." *Chapman v. N.Y. Div. for Youth*, 546 F.3d 230, 237 (2d Cir. 2008) (quoting *Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001); *see also Spectrum Sports*, 506 U.S. at 455 (holding that an antitrust plaintiff must provide a "definition of the relevant market and examination of market power."). The Court recognizes that market definition is a deeply fact-intensive inquiry that generally cannot be resolved at the motion to dismiss stage. *See Todd*, 275 F.3d at 200. However, "[w]here the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted." *Chapman*, 546 F.3d at 238 (quoting *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997); *see also, e.g.*, *Emigra Group, LLC v. Gramgomen, Del Rey, Bernsen & Loewry, LLP*, 612 F. Supp. 2d 330, 359 (S.D.N.Y. 2009) ("[I]n a case that requires proof of a relevant market, it is not enough to survive even a Rule 12(b)(6) motion to dismiss to make bald assertions as to its existence or definition."). Thus, courts have dismissed cases involving "either (1) failed attempts to limit a product market to a single brand, franchise, institution, or comparable entity that competes with potential substitutes or (2) failure even to attempt a plausible explanation as to why a market should be limited in a particular way." *Todd*, 275 F.3d at 200.

In the Third Amended Complaint, plaintiff alleges that the relevant market is "the print advertising sales market," which includes "both display and classified advertising in periodicals as well as preprinted free-standing insert advertising that is inserted in the periodical or bag that it is distributed in."[14] (Third Am. Compl. ¶ 150.) Plaintiff makes no effort to explain the alleged market with reference to the interchangeability of the product at issue, *i.e.*, "print advertising sales ." To the extent plaintiff argues that the

---

dismiss). Accordingly, the Court has subject matter jurisdiction over plaintiff's antitrust claims.

---

[14] In the Second Amended Complaint, plaintiff alleged that the relevant market was "the market for print advertising sales (display and classified) as well as the market for the distribution of preprinted free-standing inserts on Long Island, New York." (Second Am. Compl. ¶ 150.) The Court dismissed plaintiff's claim because, *inter alia*, plaintiff had failed to "limit the market to a single market." Plaintiff's conclusory combination of those two markets into one does not cure the fundamental defect with respect to plaintiff's antitrust claim that the Court identified in its September 30, 2008 Memorandum and Order – plaintiff has failed to properly define a plausible relevant market.

alleged market is unique and he therefore need not allege any product interchangeability or cross-elasticity, the Court rejects that argument. *See, e.g.*, *B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp. 162, 171 (S.D.N.Y. 1995). ("Merely asserting that a commodity is in some way unique is insufficient to plead a relevant market. Rather, an antitrust complaint must explain why the market it alleges is the relevant, economically significant product market." (citation omitted)) (granting motion to dismiss). For the same reason, plaintiff cannot avoid pleading the relevant market by conclusory assertions that he was Newsday's only competitor. (*See* Third Am. Compl. ¶ 18.) In *B.V. Optische*, the plaintiff argued that the relevant market was "chest equalization radiography" and that "no persons other than the parties hereto have had the capacity to provide chest equalization radiography equipment in the United States." 909 F. Supp. at 172. The court rejected that argument and dismissed plaintiff's antitrust claim on the grounds that the "pleadings do not refer to any reasonably interchangeable alternatives, nor do they offer an explanation for why they are defining the relevant product market in such narrow terms." *Id.* In this case, because plaintiff has failed to adequately allege the relevant market, his antitrust claim must fail.[15]

*See, e.g.*, *Chapman*, 536 F.3d at 237; *Arnold*, 418 F. Supp. 2d at 187 (dismissing antitrust claims because "[p]laintiffs [made] no effort to define the 'new automobile sales' market"); *Polargrid LLC v. Videsh Sanchar Nigam Ltd.*, No. 04 Civ. 9578, 2006 WL 2266351, at *6 (S.D.N.Y. Aug. 7, 2007) (dismissing Section 2 Sherman Act claim because "complaint refers merely to 'fiber optic bandwidth,' without any explanation of what this market consists of, its geographic scope, or whether its constituent elements are interchangeable so as to qualify as a market under the antitrust laws"); *Commercial Data Servers, Inc. v. Int'l Business Machines Corp.*, 166 F. Supp. 2d 891, 896-98 (S.D.N.Y. 2001) (granting motion to dismiss where plaintiff failed to adequately allege relevant market).

---

[15] Plaintiff has also failed to allege that Newsday had monopoly power, or a dangerous probability of obtaining monopoly power, in the market. *See, e.g.*, *All Star Carts and Vehicles, Inc. v. BFI Canada Income Fund*, 596 F. Supp. 2d 630, 641 (E.D.N.Y. 2009) ("Critical to the determination of whether a plaintiff states a Section 2 claim of monopolization, or an attempt to monopolize, is whether there is a proper pleading of monopoly power and relevant market."). In particular, plaintiff's monopolization claim must fail because plaintiff has failed to allege that the defendant has

monopoly power in anything but a conclusory fashion. *See, e.g.*, *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F. Supp. 832, 837-38 (S.D.N.Y. 1988) (holding that conclusory allegation that party "monopolized and continued to monopolize" the relevant market, without allegations of market share, was insufficient to survive motion to dismiss). Although a claim of attempted monopolization requires a lesser showing of market power, *see Top Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 100 (2d Cir. 1998), plaintiff has also failed to allege in anything but a conclusory fashion that there was a dangerous probability that Newsday would obtain monopoly power. *See, e.g.*, *Orion Elec. Co. v. Funai Elec. Co.*, No. 01 CV 3501(AGS), 2002 WL 377541, at *7 (S.D.N.Y. Mar. 11, 2002) (granting motion to dismiss where plaintiff had failed to adequately allege that there was a dangerous probability of defendant's obtaining monopoly power because plaintiff did not define the relevant market).

## 2. Anticompetitive conduct

Even assuming *arguendo* that plaintiff has adequately pled a relevant market, plaintiff has not stated a claim under Section 2 of the Sherman Act because he has not adequately alleged any anticompetitive conduct. Plaintiff relies on conclusory allegations that the defendants engaged "in the anticompetitive practice of 'bundling' and 'tying' print advertising and distribution services across multiple product lines." (Third Am. Compl. ¶ 152.) These allegations are insufficient to allege that Newsday undertook predatory or anticompetitive conduct. To allege a tying claim, a plaintiff must allege that the defendant sold one product "on the condition that the buyer also purchase a different (or tied) product." *De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996). "[T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." *Hack v. President and Fellows of Yale College*, 236 F.3d 81, 85 (2d Cir. 2000) (citing *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984)); *see also DeJesus*, 87 F.3d at 70. The five elements of a tying claim are:

> [F]irst, a tying and a tied product; second, evidence of actual coercion by the seller that forced the buyer to accept the tied product; third, sufficient economic power in the tying product market to coerce purchaser acceptance of the tied product; fourth, anticompetitive effects in the tied market; and fifth, the involvement of a

"not insubstantial" amount of interstate commerce in the "tied" market.

*In re Wireless Tel. Servs. Antitrust Litig.*, No. 02 Civ. 2637, 2003 WL 21912603, at *4 (S.D.N.Y. Aug. 12, 2003) (citation and quotation marks omitted). "[A]n antitrust complaint is insufficient if it simply contains conclusory allegations which merely recite the litany of antitrust." *Sage Realty Corp. v. ISS Cleaning Servs. Group, Inc.*, 936 F. Supp. 130, 135 (S.D.N.Y. 1996).

To the extent that plaintiff alleges a bundling or tying antitrust claim, plaintiff fails to allege a single element. All plaintiff alleges is that Newsday "engaged and engages in the anticompetitive practice of 'bundling' and 'tying' print advertising and distribution services across multiple product lines, including newspaper advertising, Pennysaver advertising, weekly TV listings guide advertising and distribution services, creating artificially low individual advertising rates and pricing for these separate advertising products and distribution services that are not commercially reasonable and requiring its preferred advertisers to participate in and purchase these bundled products and services to obtain steep discounts in their newspaper print advertisings and preprinted free-standing insert distribution purchases." (Third Am. Compl. ¶ 152.) As discussed above, plaintiff has failed to define the relevant market and has failed to allege in anything but a conclusory manner that Newsday exerts some sort of control over that alleged market.[16]

---

[16] Plaintiff's alleged market in "print advertising sales" is far too broad and ill-defined to support a tying claim. *See E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 32 (2d Cir. 2006) ("'[F]inished wood products' is a term that covers

Even more fatal to this tying claim is plaintiff's complete lack of allegations with respect to any consumer purchasing a product that he or she did not want as the result of buying another product.[17] *See E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 32 (2d Cir. 2006) ("The complaint is . . . insufficient to allege a tying violation. Even under notice pleading, an antitrust defendant charged with illegal tying is entitled to some specificity as to the conduct alleged to be coercive, the customers who would have purchased a product elsewhere but for the coercion, the particular products sold as a result of the coercion, the anticompetitive effects in a specified market, and the effect on the business of the plaintiff.").

Therefore, because the conduct alleged in the complaint is insufficient, as a matter of law, to establish the requisite "predatory or anticompetitive conduct" that must be alleged in order to state a claim under the Sherman Act, plaintiff's antitrust claim is dismissed. *See, e.g., Posr v. Killackey*, No. 01 Civ. 2320(LTS)(GWG), 2002 U.S. Dist. LEXIS 9604, at *11 (S.D.N.Y. May 31, 2002) ("[The plaintiff] has not alleged any facts suggesting that [the defendant] has monopolized, attempted to monopolize or combined or conspired with another to monopolize any part of the trade in the [relevant market]. . . . Thus, [the plaintiff's] claim under 15 U.S.C. § 2 must be dismissed."); *see Santana Prods., Inc. v. Sylvester & Assocs., Ltd.*, 121 F. Supp. 2d 729, 736 (E.D.N.Y. 1999) ("Thus, where only one competitor is alleged to be targeted, as opposed to an entire market, a conspiracy to monopolize claim must fail.").

In sum, because plaintiff has failed to adequately allege a relevant market or anticompetitive conduct, plaintiff's claim under the Sherman Act is dismissed.

## IV. DEFAMATION CLAIMS

Plaintiff also alleges state law claims for libel, slander, and injurious falsehoods. Defendants argue that all of plaintiff's defamation claims must be dismissed. For the reasons discussed below, plaintiff has adequately alleged a libel claim. Plaintiff has also adequately alleged a slander claim with respect to the Giaimo defendants. Defendants' motion to dismiss is granted with

---

an enormous variety of goods with an enormous number of uses. The phrase is exceptionally broad and vague, potentially encompassing hundreds of different products, and the complaint does not attempt to define the phrase or even narrow the range of things or products to which the phrase might refer.").

[17] Plaintiff also alleges that Newsday used its circulation scheme to charge high rates to some customers, while at the same time giving "steep discounts" to certain "favored customers," which had the effect of "creating a rigged cost for advertising and distribution services that small publishers, like the plaintiff, cannot and could not realistically compete with." (Third Am. Compl. ¶ 151.) To the extent plaintiff argues that this alleged practice was anticompetitive conduct apart from the alleged bundling and tying discussed above, this claim also fails for the same reasons – namely, plaintiff has not provided a definition of the relevant market or explained in anything but a conclusory way how this alleged conduct affected competition or gave Newsday a dangerous probability of obtaining a monopoly. *See Kahn v. iBiquity Digital Corp.*, 309 F. App'x 429, 431 (2d Cir. 2009) ("[T]he complaint fails to state a claim under section 2 of the Sherman Act. It contains no non-conclusory allegations to support a claim that defendants monopolized, or attempted to monopolize . . . ." (internal quotation and alterations omitted)).

respect to the remainder of plaintiff's defamation claims.

## A. Libel

Plaintiff's libel claim is based on September 2005 Newsday articles reporting on a lawsuit filed against plaintiff by Giaimo LLP on behalf of the route distributor defendants. Specifically, plaintiff asserts that the Newsday defendants, Giaimo defendants, and route distributor defendants worked together to "concoct and draft . . . a summons and complaint that they knew at all times contained numerous allegations of criminal activity engaged in by the plaintiff that were false and baseless." (Third Am. Compl. ¶ 173.) Plaintiff also alleges that the defendants created these complaints "in an attempt to avail themselves of the privileges associated with court proceeding documents and then deliberately circulated these false and baseless documents . . . in an effort to deliberately harm the plaintiff and his business with this defamatory publicity." (*Id.*) The lawsuit was filed in August 2005 by the Giaimo defendants on behalf of the route distributor defendants. The Newsday defendants then "republished these defamatory and libelous per se falsehoods despite being advised numerous times in advance . . . that the allegations they were about to print regarding the plaintiff and his business were false and baseless." (*Id.*) For the reasons discussed below, defendants' motion to dismiss plaintiff's libel claims is denied.

### 1. Legal Standard

An action for defamation that is expressed in writing or print is the common law cause of action of libel. *See Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001). In order to state a cause of action for libel under New York law, a plaintiff must plead: (1) a false and defamatory statement of fact concerning the plaintiff; (2) that was published by the defendant to a third party; (3) due to the defendant's negligence (or actual malice, depending on the status of the person libeled); and (4) special damages or *per se* actionability. *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 176 (2d Cir. 2000).

Statements made in the course of court proceedings are absolutely privileged under New York common law. *See Martirano v. Frost*, 255 N.E.2d 693, 694 (N.Y. 1969) ("[A] statement, made in open court in the course of a judicial proceeding, is absolutely privileged if, by any view or under any circumstances, it may be considered pertinent to the litigation."); *see also Sexter & Warmflash, P.C. v. Margrabe*, 828 N.Y.S.2d 315, 322 (App. Div. 2007) ("Judicial proceedings are among the situations in which an absolute privilege is recognized.). However, the "privilege for in-court statements is considerably broader than that for out-of-court reports relating to the proceeding." *Long v. Marubeni America Corp.*, 406 F. Supp. 2d 285, 294 (S.D.N.Y. 2005).

Out-of-court statements reporting on judicial proceedings are governed by Section 74 of the New York Civil Rights Law, which provides that "[a] civil action cannot be maintained against any person, firm, or corporation, for the publication of a fair and true report of any judicial proceeding . . . ." N.Y. Civil Rights Law § 74. The privilege, however, is not absolute. As the Court of Appeals has held, Section 74 does not allow a person to "maliciously institute a judicial proceeding alleging false and defamatory charges, and to then circulate a press release

or other communication based thereon and escape liability by invoking the statute." *Williams v. Williams*, 23 N.Y.2d 592, 599 (1969); *Halycon Jets, Inc. v. Jet One Group, Inc.*, 894 N.Y.S.2d 392, 393 (App. Div. 2010) ("*Williams* created a judicial exception to the statutory protections if it appears that the public policy goals of the statute are being thwarted by the commencement of litigation intended as a device to protect a report thereof and thereby disseminate defamatory information."); *see also Long v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285, 294 (S.D.N.Y. 2005) ("Out-of-court statements such as press releases, which are not covered by the litigants' privilege, are privileged only to the extent that they represent fair and true reports of what occurred in the proceeding (subject to the *Williams* exception.)." Therefore, Section 74 does not apply to "parties who maliciously institute a proceeding alleging false and defamatory charges and publicize them in the press." *McNally v. Yarnall*, 764 F. Supp. 853, 856 (S.D.N.Y. 1991) (citing *Williams*, 23 N.Y.2d 592).

### 2. Application

The statements made by the Giaimo defendants and route distributor defendants in their state court proceeding are absolutely privileged by New York common law. However, that privilege does not apply to the publication of those statements to Newsday or by Newsday. *See, e.g.*, *Bridge C.A.T. Scan Assocs. v. Ohio Nuclear, Inc.*, 608 F. Supp. 1187, 1195 (S.D.N.Y. 1985) ("The delivery of a copy or report of a complaint to the press is not a statement made during the course of judicial proceedings and therefore is not protected by the common law privilege afforded such statements"). Defendants argue

that the statements are protected by Section 74 because they were fair and true reports of a judicial proceeding. Plaintiff alleges, however, that all of the defendants "worked together" to "concoct and draft" the state civil complaint, and did so specifically "to avail themselves of the privileges associated with court proceedings."[18] (Third Am. Compl. ¶ 173.) Given the new allegations in the Third Amended Complaint that all of the defendants drafted the complaint together with the express purpose of using the complaint as a device to protect their subsequent defamatory statements, the Court cannot conclude at this stage of the proceedings that Section 74 protects the out-of-court publication by defendants.[19] *See, e.g.*, *Halycon Jets*, 894

---

[18] In his opposition papers, plaintiff further alleges that Newsday defendant Mark Harrington, the reporter who wrote the allegedly defamatory articles, met with Furnell, the Giaimo defendants, and others in a bar in April 2005 and on numerous occasions thereafter to discuss the anticipated lawsuit. (Pl.'s Newsday Opp. at 5.) Harrington allegedly discussed the contents of the proposed lawsuit with Joseph Giaimo and, indeed, wrote the bulk of his Newsday article before the lawsuit was filed. (*Id.*) The Court has not considered these additional allegations outside the pleadings. However, the other allegations in the Third Amended Complaint are sufficient to survive a motion to dismiss.

[19] The Newsday defendants argue that they cannot be liable for an alleged conspiracy to defame plaintiff. *See, e.g.*, *Rivera v. Greenberg*, 663 N.Y.S.2d 628, 629 (App. Div. 1997). However, plaintiff alleges not that the Newsday defendants merely "conspired" to defame him, but that they were actually involved in the drafting of the allegedly defamatory civil complaint with the purpose of thereafter defaming plaintiff and that, therefore, Section 74 should not apply to their subsequent publication. Furthermore, "[u]nder New York law, all who take part in the

N.Y.S.2d at 393 ("Defendants' intention to use the [lawsuit] as such a device is a factual issue that is sufficiently pleaded and cannot [] presently be decided."); *Bridge C.A.T. Scan*, 608 F. Supp. at 1195 ("Once filed, the complaint is a public document with access to it available to the public and the news media. But for [a party], purposely and maliciously, to stimulate press coverage and wide publicity of a complaint with its allegedly false and malicious statements is beyond the pale of protection."). Accordingly, defendants' motions to dismiss plaintiff's libel claims are denied.

### B. Slander

Plaintiff also alleges in the Third Amended Complaint that various defendants slandered him. Plaintiff does not oppose the Newsday defendants' motion to dismiss plaintiff's slander claim, (Pl's. Newsday Opp. at 8), and so the Newsday defendants' motion

to dismiss this claim is granted. With respect to the Giaimo defendants and route distributor defendants, plaintiff alleges a variety of slanderous statements (*see* Third Am. Compl. ¶¶ 184-86), but generally does not identify who made those statements or when they were made. *See Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 411 (S.D.N.Y. 2009) ("A pleading asserting a cause of action for defamation is only sufficient if it adequately identifies the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated." (quotation omitted)). Therefore, any claim based on these unspecified statements is dismissed. However, in plaintiff's opposition papers, he argues that the Giaimo defendants made out-of-court defamatory statements, specifically that defendant Joseph Giaimo stated: "I've been practicing law 45 years, and I've never seen such an obvious and profound fraud committed upon hardworking, blue-collar workers who in some cases poured their life savings into a non-existing TV guide," which appeared in the September 7, 2005 Newsday article (Pl.'s Giaimo Opp. at 6; Pl.'s Newsday Opp. at 8.) With respect to this statement, or other allegedly slanderous statements appearing in the September 2005 Newsday articles, plaintiff has adequately alleged a slander claim.[20] *See Morgenstern, v. County of Nassau*, No. 04-CV-0058(JS)(ARL), 2008 WL 4449335, at *20 (E.D.N.Y. Sept. 29, 2008) ("Here, although the allegedly defamatory words were written in newspaper publications, Plaintiff's action is

---

procurement, composition and publication of a libel are responsible in law and equally so." *Pisani v. Staten Island Univ. Hosp.*, 440 F. Supp. 2d 168, 179 (E.D.N.Y. 2006) (denying motion to dismiss) (internal citation, quotation marks, and alterations omitted); *see also Afshari v. Barer*, 769 N.Y.S.2d 687, 689 (Supp. App. Term 2003) ("Plaintiff [] admitted participation in the preparation of the letter, and while not a signatory thereto, she was properly held jointly liable for the defamation."). Therefore, because plaintiff alleges that the Newsday defendants participated in the drafting of the civil complaint, he has adequately alleged a cause of action for libel against them, at least at the motion to dismiss stage. Of course, if plaintiff is unable to uncover any evidence in discovery to support the allegation that Newsday participated in the drafting of the complaint, the claim against Newsday will fail as a matter of law at the summary judgment stage.

---

[20] To the extent defendants argue that the slander claim must be dismissed based on New York Civil Rights Law § 74, the Court rejects that argument for the same reasons discussed above in connection with plaintiff's libel claims.

against those who spoke the words to the reporters, and thus lies in slander rather than libel.") Therefore, the Court denies the Giaimo and route distributor defendants' motion with respect to the allegedly slanderous statements appearing in the September 2005 Newsday articles. As discussed above, the Newsday defendants' motion to dismiss plaintiff's slander claim is granted in its entirety.

## C. Injurious Falsehoods

Plaintiff also alleges a claim for injurious falsehoods.[21] As this Court explained in its September 30, 2008 Memorandum and Order, a plaintiff must allege special damages "with the requisite specificity" to proceed on an injurious falsehood claim. *See Kasada, Inc. v. Access Capital, Inc.*, No. 01 Civ. 8893, 2004 WL 2903776, at *16 (S.D.N.Y. Dec. 14, 2004); *Rall v. Hellman*, 726 N.Y.S.2d 629, 632 (App. Div. 2001). Plaintiff's allegations of damages of $500,000,000, without any itemization, are insufficient. *See Drug Research Corp. v. Curtis Publ'g Co.*, 166 N.E.2d 319, 322 (N.Y. 1960) ("The damage claimed is $5,000,000. Such round figures, with no attempt at itemization, must be deemed to be a representation of general damages."); *Vigoda v. DCA Prods. Plus Inc.*, 293 A.D.2d 265, 266 (N.Y. App. Div. 2002) (holding that "damages in round numbers . . . amount to mere general allegations"). Furthermore, to the extent plaintiff alleges a claim for injurious falsehoods based on the statements in the Newsday articles, such a claim is dismissed as duplicative of the libel and slander claims. *See, e.g., O'Brien v. Alexander*, 898 F. Supp. 162, 172 (S.D.N.Y. 1995) (dismissing as duplicative plaintiff's injurious falsehoods claim where the claim "relie[d] on the same statements that form the basis of the defamation claim" ), *aff'd in part and rev'd in part on other grounds*, 101 F.3d 1479, 1488 (2d Cir. 1996). Thus, plaintiff's injurious falsehoods claims are dismissed.

---

[21] The Giaimo defendants argue that plaintiff's injurious falsehoods claim is identical to a claim brought by plaintiff against defendants in state court, which survived a motion to dismiss in state court. Defendants argue that the Court should therefore abstain from deciding this issue under *Burford v. Sun Oil Company*, 319 U.S. 315 (1943). However, the *Burford* abstention doctrine applies to federal court actions when there is a parallel state administrative proceeding, *see Hachamovitch v. DeBuono*, 159 F.3d 687, 697 (2d Cir. 1998), and is therefore inapplicable to the instant case. To the extent defendants argue that the Court should abstain from hearing plaintiff's claim on some other ground, the Court, in its discretion, denies such a request. "Where, as here, a federal court properly has subject matter jurisdiction, it has a 'virtually unflagging obligation' to exercise that jurisdiction, even if an action concerning the same matter is pending in state court." *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 327 (2d Cir. 1986) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976)); *see also Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000) (holding that "abstention and dismissal are inappropriate when damages are sought, even when a pending state proceeding raises identical issues . . . but that a stay of the action pending resolution of the state proceeding may be appropriate"). Because plaintiff's injurious falsehoods claim arises from the same set of facts as plaintiff's federal Lanham Act claim, making pendent jurisdiction appropriate, the Court declines to stay this claim. *See Kirschner*, 225 F.3d at 239 ("It lies within the district court's discretion whether to exercise pendent jurisdiction and if so, whether to stay the state law claims pending completion of the state proceedings.").

## V. FRAUD CLAIM AGAINST CONSUMERS WAREHOUSE DEFENDANTS

Plaintiff alleges that, in January 2005, he was contacted by various representatives of defendant Consumers Warehouse. (Third Am. Compl. ¶¶ 204-05.) The Consumers Warehouse defendants indicated that they wanted to advertise in plaintiff's publication. (*Id.* ¶ 205.) As a result, plaintiff fronted various expenses for the proposed advertising. (*Id.* ¶¶ 205, 207) However, plaintiff alleges that the Consumers Warehouse defendants misrepresented their intentions and, in fact, had no intention of advertising with plaintiff, gave Newsday the information they learned about plaintiff's business, and copied the style and trade dress of plaintiff's publication. (*Id.* ¶¶ 207-08.) For the reasons set forth below, defendants' motion to dismiss plaintiff's fraud claim is denied.

Defendants argue that, although plaintiff initially brought a fraud claim against the Consumers Warehouse defendants in this action, plaintiff did not include that claim in his Second Amended Complaint. Therefore, defendants argue that when plaintiff was given an opportunity to re-plead the claims dismissed from his Second Amended Complaint, he could not re-assert a fraud claim. The Court rejects this argument. In its September 30, 2008 Memorandum and Order, the Court provided plaintiff with "one opportunity to amend his complaint to attempt to correct these pleading defects." The factual allegations that now form the basis for plaintiff's fraud claim were included in the Second Amended Complaint as part of plaintiff's RICO theory. (*See* Second Am. Compl. ¶¶ 84-86.) Plaintiff explains in his opposition papers that he attempted to correct

the pleading defects in his earlier complaint by re-framing his RICO claim against the Consumers Warehouse defendants as a fraud claim based on the same alleged facts. (Pl.'s Consumers Warehouse Opp. at 4.) Given plaintiff's *pro se* status, and the fact that the same factual allegations were included in plaintiff's Second Amended Complaint, the Court concludes that dismissal of plaintiff's fraud claim on this ground is inappropriate.

Defendants also argue that the Court should dismiss the fraud claim because plaintiff brought an identical claim in state court. However, plaintiff has since voluntarily withdrawn that state court claim. (*See* Pl.'s Consumers Warehouse Opp. at 4.) Defendants argue that this is evidence of forum shopping and warrants dismissal of the claim. However, the Court does not find that plaintiff engaged in intentional forum shopping, especially given plaintiff's *pro se* status. *See, e.g.*, *Simoiu v. U.S. Marshals Serv.*, No. 00 Civ. 7133(DAB), 2005 WL 292749, at *3 (S.D.N.Y. Feb. 8, 2005) (denying motion to dismiss *pro se* plaintiff's complaint where there was "no indication that Plaintiff was intentionally forum-shopping").

Finally, defendants argue that plaintiff lacks standing to assert a fraud claim because plaintiff's company, I-Media Corporation, had been dissolved at the time of the alleged fraud. Plaintiff responds that the entity involved in the negotiation was actually I-Media Company, the successor to I-Media Corporation. As discussed in the Court's September 30, 2008 Memorandum and Order, this is a factual question that cannot be resolved at the motion to dismiss stage.

Accordingly, the Consumers Warehouse defendants' motion to dismiss plaintiff's fraud claim is denied.

## VI. CLAIMS AGAINST SPRINGER

*Pro se* defendant Dennis Springer moves the Court to dismiss all of plaintiff's claims against him. Springer is mentioned only twice in the complaint – once identifying his position with Newsday and once listing him as a member of an alleged RICO enterprise. (Third Am. Compl. ¶¶ 28, 94.) Plaintiff has provided no specific allegations against defendant Springer. Accordingly, the Court again dismisses all claims against defendant Springer under Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

## VII. CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are granted with respect to plaintiff's RICO, Sherman Act, ECPA, and injurious falsehood claims. The Newsday defendants' motion to dismiss plaintiff's slander claim is also granted. Defendants' motions to dismiss plaintiff's defamation claims are denied in all other respects. The Consumers Warehouse defendants' motion to dismiss plaintiff's fraud claim is denied. Defendant Dennis Springer's motion to dismiss all of plaintiff's claims against him is granted in its entirety. The parties shall proceed with discovery under the direction of Magistrate Judge Boyle.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: March 25, 2010
Central Islip, NY

\* \* \*

Plaintiff Anthony Conte is *pro se*. The Newsday defendants are represented by Andrew G. Celli, Jr., Esq., O. Andrew F. Wilson, Esq., and Kennisha Anlee Austin, Esq., of Emery Celli Brinckerhoff & Abady LLP, 75 Rockefeller Plaza, 20th Floor, New York, New York 10019. The Consumers Warehouse defendants are represented by Sanford Strenger, Esq., of Salamon, Gruber, Blaymore & Strenger, P.C., 97 Powerhouse Road, Suite 102, Roslyn Heights, NY 11577. The route distributor defendants and the Giaimo defendants are represented by Joseph O. Giaimo, Esq., and Jade L. Fuller, Esq., of Giaimo Associates LLP, 80-02 Kew Gardens Road, Kew Gardens, NY 11415. Defendant Smith is represented by Paul Shechtman, Esq., and Daniel Victor Shapiro, Esq., of Stillman, Friedman & Shechtman, P.C., 425 Park Ave, New York, NY 10022. Defendants Sam Martinez and Dennis Springer are *pro se*.